## UNITED STATES v. ILLIG.

(District Court, W. D. Pennsylvania. November Term, 1920.)

No. 425.

1. **Indictment and information ⊚⟹3—Violation of the Volstead Act not "infamous crime" requiring indictment.**

    Violation of the Volstead Act is not an "infamous crime" within the meaning of Const. Amend. 5, and the violator may be held to answer on an information, under Rev. St. § 1022 (Comp. St. § 1686), and Criminal Code, § 335 (Comp. St. § 10509).

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infamous Crime.]

2. **Indictment and information ⊚⟹56—Accused must be informed of nature of accusation.**

    Under Const. Amend. 6, the crime charged must be so definitely defined that the accused may thereafter be protected from prosecution on the same charge by plea of former acquittal or conviction, especially when the prosecution is based solely on information.

3. **Indictment and information ⊚⟹121(5)—Bill of particulars cannot give life to bad indictment.**

    A bill of particulars cannot give life to a bad indictment, and that which must affirmatively appear on the face of the indictment can never be supplied by a bill of particulars.

4. **Indictment and information ⊚⟹66—Information need not include defensive negative averments.**

    It is unnecessary for an information to include any defensive negative averments.

5. **Indictment and information ⊚⟹63—Facts and not conclusions must be alleged.**

    In prosecution under the Volstead Act by information, the validity of the information must depend on averments of fact, comprising all the elements of the offense, but not on the conclusion of the pleader that the act complained of was prohibited and unlawful, notwithstanding the provision in section 32 of title 2 of the act that "it shall be sufficient to state that the act complained of was then and there prohibited and unlawful."

6. **Intoxicating liquors ⊚⟹198—Existence of probable cause held not supported by oath or affirmation.**

    An information for violation of the Volstead Act should issue only upon competent evidence and proper affidavit stating facts and not conclusions, in order to comply with Const. U. S. Amend. 4.

7. **Intoxicating liquors ⊚⟹211—Information held not to properly charge crime.**

    An information, under the Volstead Act, charging that defendant "did unlawfully and willfully have and possess a large quantity * * * of intoxicating liquor without being authorized so to do in the manner provided by the National Prohibition Act," was insufficient.

8. **Intoxicating liquors ⊚⟹139—Mere possession not offense under Eighteenth Amendment.**

    Const. U. S. Amend. 18, does not make the mere possession of intoxicating liquors an offense, and Congress has no power, and did not attempt under the Volstead Act to make mere possession, stripped of every other fact, a crime, being an offense only when prohibited for the purpose of making effective that which the amendment prohibits.

Information by the United States against William C. Illig for violation of the Volstead Act. On motion to quash. Motion granted.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Walter Lyon, U. S. Atty., of Pittsburgh, Pa.
S. Y. Rossiter, of Erie, Pa., for defendant.

THOMSON, District Judge. [1] We have before us for consideration a motion to quash an information made by the United States attorney, charging the defendant with violation of the Volstead Act (41 Stat. 305), in nine separate counts. The information was drawn at a time in the early enforcement of the Volstead Act, when, in an earnest effort to enforce the Eighteenth Amendment, other constitutional amendments and legal principles of basic importance seemed to have been overlooked. In order to intelligently pass upon the motion to quash, it is necessary to consider certain fundamental propositions, which, when applied to the information, must determine its validity. The first reason assigned in support of the motion to quash is that the procedure by information is unlawful and a deprivation of the defendant's constitutional rights.

Under the Fifth Amendment to the Constitution of the United States, no person can be held to answer for a capital or other infamous crime unless on a presentment or indictment of the grand jury. This provision is very specific, the only uncertainty arising as to the meaning of the words "infamous crime." These words the Supreme Court has interpreted. In United States v. Wilson, 114 U. S. 417, at page 425, 5 Sup. Ct. 935, at page 939 (29 L. Ed. 89), the court says:

"For the reasons above stated, having regard to the object and the terms of the first provision of the Fifth Amendment, as well as the history of its proposal and adoption, and to early understanding and practice under it, this court is of opinion that the competency of the defendant, if convicted, to be a witness in another case, is not the true test; and that no person can be held to answer, without presentment or indictment by a grand jury, for any crime for which an infamous punishment may be imposed by the court. The question is whether the crime is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one. When the accused is in danger of being subjected to an infamous punishment if convicted, he has the right to insist that he shall not be put upon his trial, except on the accusation of a grand jury."

The court further held that a crime may be infamous which has not been so declared by Congress, and that imprisonment for a term of years at hard labor is an infamous punishment within the meaning of the Fifth Amendment to the Constitution. In that case, the court went no further than the necessities of the decision required; but in Mackin v. United States, 117 U. S. 348, 6 Sup. Ct. 777, 29 L. Ed. 909, it was distinctly held that a crime punishable by imprisonment in the state prison or penitentiary is an infamous crime, and the defendant cannot be held to answer in the courts of the United States for such crime otherwise than on a presentment or indictment of a grand jury. In Ex parte Wilson, supra, the court said:

"The purpose of the amendment was to limit the powers of the Legislature, as well as the prosecuting officers, of the United States. * * *
"The Constitution protecting every one from being prosecuted, without the intervention of a grand jury, for any crime which is subject by law to an in-

famous punishment, no declaration of Congress is needed to secure, or competent to defeat, the constitutional safeguard."

The acts of Congress not only have not prohibited the use of informations, but have authorized their use in certain cases under section 1022 of the Revised Statutes (Comp. St. § 1686).

In Re Bonner, 151 U. S. 242, 257, 14 Sup. Ct. 323, 326 (38 L. Ed. 149), the Supreme Court held:

"If the offense be a felony, the accusation in the federal court must be made by a grand jury summoned to investigate the charge of the public prosecutor against the accused. Such indictment can only be found by a specified number of the grand jury. If not found by that number, the court cannot proceed at all. If the offense be only a misdemeanor, not punishable by imprisonment in the penitentiary (Mackin v. U. S., 117 U. S. 348), the accusation may be made by indictment of the grand jury or by information of the public prosecutor."

Following this came the Criminal Code of 1909, section 335 (Comp. St. § 10509) of which provides that all offenses punishable by imprisonment for a term exceeding one year shall be deemed felonies, and all other offenses, misdemeanors. Therefore, as the law stands, all offenses which may be punished by imprisonment exceeding one year must be prosecuted by indictment or presentment by a grand jury. Misdemeanors may be prosecuted by presentment, indictment, or information.

As none of the counts in this information charge an offense for which an imprisonment exceeding one year could be imposed, the prosecution by information is not illegal.

The defendant alleges in the second place, in substance, that the information is defective by reason of generality, failing to specify particularly the acts constituting the alleged violations, and is merely a statement of legal conclusions. This requires a more careful consideration.

[2] Under the Sixth Amendment to the Constitution, it is a fundamental requisite in a criminal prosecution that the accused shall "be informed of the nature and cause of the accusation." This not only in order that he may be enabled to properly prepare his defense, but also that the crime may be so definitely defined that the accused may thereafter be protected from prosecution on the same charge by plea of former acquittal or conviction. In Evans v. United States, 153 U. S. 587, 14 Sup. Ct. 936, 38 L. Ed. 830, in considering the sufficiency of an indictment, the court said:

"A rule of criminal pleading, which at one time obtained in some of the circuits, and perhaps received a qualified sanction from this court in United States v. Mills, 7 Pet. 138, that an indictment for a statutory misdemeanor is sufficient, if the offense be charged in the words of the statute, must, under more recent decisions, be limited to cases where the words of the statute themselves, as was said by this court in United States v. Carll, 105 U. S. 611, 612, 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' The crime must be charged with precision and certainty, and every ingredient of which it is composed must be accurately and clearly alleged. United States v. Cook, 17 Wall. 168, 174; United States v. Cruikshank, 92 U. S. 542, 558. The fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of

the Legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent.' United States v. Carll, 105 U. S. 611.

"Even in the cases of misdemeaners, the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged, not only that the former may know what he is called upon to meet, but that, upon a plea of former acquittal or conviction, the record may show with accuracy the exact offense to which the plea relates. United States v. Simmons, 96 U. S. 360; United States v. Hess, 124 U. S. 483; Pettibone v. United States, 148 U. S. 197; In re Greene, 52 Fed. Rep. 104."

United States v. Behrman, 258 U. S. 280, 42 Sup. Ct. 303, 66 L. Ed. 619.

When the prosecution is based solely on information, the above reasoning becomes particularly cogent and controlling, on account of the unusual character of the proceeding, practically unknown to the criminal procedure of Pennsylvania and many other states, by which the defendant is deprived of a preliminary hearing before a committing magistrate, which naturaly disclose to him the nature of the charge and the evidence to support it; and deprived also of the protection accorded to him against an unfounded prosecution by the timely intervention of a grand jury. It becomes apparent, therefore, from every legal viewpoint, that in a prosecution by information, which stands in lieu of the indictment of the grand jury, to which defendant must plead, upon which he must go to trial without preliminary hearing, and to which alone he must look to "be informed of the nature and cause of the accusation," that such information should without doubt be not less specific than the indictment in setting forth fully, directly, and expressly, without any uncertainty, all the elements necessary to constitute the offense, every ingredient of which it is composed.

It is true that section 32 of title 2 of the Volstead Act provides that—

"It shall not be necessary in any affidavit, information or indictment to give the name of the purchaser or to include any defensive negative averments, but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful, but this provision shall not be construed to preclude the trial court from directing the furnishing the defendant a bill of particulars when it deems it proper to do so."

[3] It is not to be assumed that this section was intended as a radical departure from the well-settled principles governing criminal pleading and procedure. A reasonable construction of this section will disclose no such intention on the part of Congress. It is a fundamental proposition of criminal pleading that a bill of particulars cannot give life to a bad indictment. Without such bill of particulars, the indictment must be able to stand alone. A bill of particulars is for the benefit of the defendant by making a valid criminal charge more specific as to the facts upon which it rests, not to support the indictment or breathe into it the breath of life. That which must affirmatively appear on the face of the indictment can never be supplied by a bill of particulars. Commonwealth v. B. & O. R. R., 223 Pa. 27, 72 Atl. 278, 132 Am. St. Rep. 723; Floren v. United

States, 186 Fed. 961, 108 C. C. A. 577; United States v. Cleveland (D. C.) 281 Fed. 249.

[4, 5] What, then, is meant by the words "it shall not be necessary in any information or indictment * * * to include any defensive negative averments, but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful"? When it is declared unnecessary for the information to include any defensive negative averments, this is in harmony with the general rule of pleading as laid down by the Supreme Court in the case of United States v. Cook, 84 U. S. (17 Wall.) 168, 21 L. Ed. 538, as follows:

"Where a statute defining an offense contains an exception, in the enacting clause of the statute, which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception. But if the language of the section defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without any reference to the exception, the [indictment] may * * * omit any such reference, as the matter contained in the exception is matter of defense and must be shown by the accused."

Most certainly, the words "it shall be sufficient to state that the act complained of was then and there prohibited and unlawful" were never intended to violate every basic principle of criminal pleading; to make the validity of the indictment dependent, not on averments of fact comprising all the elements of the offense, but on the conclusion of the pleader that a certain act complained of was prohibited and unlawful.

[6] But the validity of this information depends, not only on the sufficiency of the averments to support the several offenses charged, but also on the existence of probable cause, as upon the information a bench warrant issued and the defendant was placed under arrest. This involves the rights of the defendant under the Fourth Amendment, which provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

By the very wording of the amendment, the existence of probable cause, supported by oath or affirmation, is equally essential to sustain a warrant for the arrest of the person, as to sustain a warrant for the search and seizure of his property.

In Weeks v. United States, 216 Fed. 292, 132 C. C. A. 436, L. R. A. 1915B, 651, Ann. Cas. 1917C, 524, Judge Rogers, speaking for the Circuit Court of Appeals of the Second Circuit, reviews with clearness and learning the history of prosecution by information as it existed in England, as it was viewed by the founders of our Constitution, and its limitations and use under that instrument. The opinion, in substance, holds that in the United States the informations

used by the prosecuting officers are the informations used by the Attorney General in England; and as at common law an information could be filed by the Attorney General on his oath of office, and without verification, the verification of an information by a prosecuting attorney in this country is unnecessary, unless required by some constitutional or statutory provision. That the provision of the Fourth Amendment, that no warrants shall issue but upon probable cause supported by oath or affirmation, does not require an information filed by a district attorney to be verified or supported by an affidavit based on personal knowledge and showing probable cause, unless such information is made the basis of an application for a warrant of arrest. If the sole purpose of the information is to state the accusation, the defendant may be charged and tried for a misdemeanor on an information not verified nor so supported. In the case at bar, the information of the district attorney on which he asked and obtained a warrant for defendant's arrest was not verified or supported by his affidavit. And the existence of probable cause can be found, if at all, only in the affidavit of Arthur C. Hearle, which was attached to and made a part of the information. It is entirely clear that the safeguards thrown about the accused by the Fourth Amendment, in relation to unreasonable searches and seizures, protects the person from unlawful seizure as well as his property from unlawful seizure and search. It goes for the saying that the framers of the amendment did not regard the right of personal liberty as less important than the right of private property; and to protect both against unreasonable seizure and search, no warrant can issue except upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the person or things to be seized. The authorities clearly establish that the finding of probable cause is a judicial conclusion, to be drawn by the magistrate from the facts presented to him. Such conclusion cannot be drawn by the official accuser or by the witnesses who may testify before him. The warrant should issue only upon competent evidence, such as would be admissible upon the trial of the case before a jury. As Justice Bradley said, in Re Rule of Court, Fed. Cas. No. 12,126, 3 Woods, 502:

"It is plain upon this fundamental enunciation * * * that the probable cause referred to, and which must be supported by oath or affirmation, must be submitted to the committing magistrate himself, and not merely to an official accuser; so that he, the magistrate, may exercise his own judgment on the sufficiency of the grounds shown for believing the accused person guilty."

Facts, and not conclusions drawn by the witness, must be the basis of the magistrate's finding of probable cause. United States v. Tureaud (C. C.) 20 Fed. 621; United States v. Polite (D. C.) 35 Fed. 58; In re Dana (D. C.) 68 Fed. 894; Giles v. United States (C. C. A.) 284 Fed. 208.

Here the warrant of arrest is not supported by the statement of the district attorney, contained in the information, nor is it aided by the affidavit of Arthur C. Hearle thereto attached, as he does not testify from personal knowledge, but draws general conclusions almost in the language of the district attorney in the information itself. It

comes far from measuring up to the requirement as to the statement of facts necessary to support a finding of probable cause. For this reason alone, the information cannot stand.

The various counts of the information are also defective in failing to set forth the ingredients of which the several offenses are composed, the several elements that enter into them, that the defendant may be informed of the precise offense which he is called upon to meet, and be enabled to subsequently interpose a plea of former acquittal or conviction. In most of the counts, which I will not stop to severally consider, the averments are merely conclusions of the pleader, rather than averments of fact constituting a violation of the federal statute.

[7, 8] As an example: The first count charges that the defendant "did willfully and unlawfully have and possess a large quantity (stating the amount) of intoxicating liquor without being authorized so to do in the manner provided by the National Prohibition Act." The count could scarcely be drawn more barren of facts. Nothing is averred as to the character of the defendant's business, where the liquors were found or possessed, the purpose of their possession, or in what way the possession was unlawful. The pleader wholly ignores the fact that possession of intoxicating liquors is not made an offense under the Eighteenth Amendment; that Congress did not attempt in the Volstead Act, nor would they have had the power, to make the mere possession, stripped of every other fact, a crime. Possession can be made an offense only, when prohibited for the purpose of making effective that which the amendment prohibits. But Congress cannot do so for the purpose of adding a prohibited act to those prescribed in the fundamental law. Hilt et al. v. U. S. (C. C. A.) 279 Fed. 421; U. S. v. Beiner (D. C.) 275 Fed. 704; U. S. v. Dowling (D. C.) 278 Fed. 630; Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 Sup. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548.

For the reasons set forth in this opinion, the defendant's motion must prevail, and the information is quashed.